IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD BROWER, individually and on behalf of all others similarly situated, | ) ) ) | Case No. |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| HYATT HOTELS CORP. | ) ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Harold Brower ("Plaintiff"), through his undersigned attorneys, Bursor & Fisher, P.A. and McMorrow Law, P.C., brings this Class Action Complaint against Defendant Hyatt Hotels Corporation ("Hyatt"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant Hyatt, arising from the unfair and unconscionable assessment and collection of "resort fees." Plaintiff also seeks to force Hyatt to advertise up-front to consumers the true total prices of its hotel rooms, including resort fees.

2. Today's era of ubiquitous Internet-based hotel booking allows for immediate price comparisons between dozens of hotels in a given locale. Hotels like Hyatt compete for customers by purportedly offering the lowest room rate. Hotels have a huge incentive to post base rates that are as low as possible.

3. Hyatt uses an unlawful trade practice called "drip pricing" in advertising the price for its hotel rooms whereby it initially hides a portion of a hotel room's daily rate from consumers. Hyatt calls this hidden portion of the room rate a "resort fee." One key effect of this price deception is that consumers shopping for a hotel room are misled into believing a Hyatt room is cheaper than it actually is. Hyatt's motive in continuing this deceptive practice is profit. It has reaped hundreds of millions of dollars from deceptive "drip pricing."

4. In October 2018, Business Travel News reported that fees and surcharges at U.S. hotels were "expected to hit a record $2.93 billion" in 2018. Among those fees, "resort fees are now common in major cities, averaging between $20 and $40," and "account for the largest share" of the increases in 2018. Major hotels like Hyatt were called out for simultaneously putting in place 48-hour to 72-hour cancellation penalties, making it tougher for customers to cancel reservations if they object to the fees. 2019 is expected to mark another record year for fees and surcharges, with the largest percent increase coming from service and amenity fees, including "urban resort fees."[1]

5. In November 2012, the Federal Trade Commission ("FTC") urged all hotels, including Hyatt, to include mandatory "fees" in the total advertised room price. The FTC found that consumers complained that they did not know that they would be required to pay resort fees in addition to the quoted hotel room rate.

6. In December 2015, ten members of Congress expressed their concern that "resort fees allow hotels to mask the true price of a hotel room and reduce guests' ability to compare costs and fully budget for a family vacation or business trip," and stated that the practice should be

---

[1] https://www.businesstravelnews.com/Lodging/US-Hotel-Fees-and-Surcharges-Projected-to-Hit-2-93B-in-2018

-2-

banned under Section 5 of the Federal Trade Commission Act as an "unfair or deceptive act[] or practice[] in or affecting commerce."

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. § 1332(d), Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's and class members' claims occurred in this District and because Defendant transacts business and/or have agents within this District, and Defendant resides here.

9. Venue and jurisdiction are also proper because Hyatt's terms and conditions include a clause titled "Jurisdiction/ Governing Law/ Choice of Forum" which provides for venue and jurisdiction "in state or federal courts located in or near Chicago, Illinois."[2]

## PARTIES

10. Plaintiff Harold Brower is a citizen of California, residing in Escondido, California. Mr. Brower has stayed at several Hyatt properties in the last two or more years, including the Hyatt Palm Springs and Hyatt House at Anaheim. Mr. Brower also stayed at the Hyatt Regency Scottsdale Resort and Spa at Gainey Ranch within the last five years. Each time Mr. Brower stayed at these Hyatt facilities, he reviewed advertised room rates for Hyatt and competing hotels in the area and relied on the advertised room rates when making his decision where to stay. Each time Mr. Brower stayed at these Hyatt properties, he paid a $20-40 resort fee which was bundled with

---

[2] *See* https://help.hyatt.com/en/hyatt-terms.html (last visited July 12, 2019).

mandatory government-imposed taxes. Mr. Brower was either unaware of the fees at the time he made his reservations, or he believed the fees were mandatory and in the nature of government-imposed taxes. Mr. Brower would not have agreed to pay the fees if he had understood at the time that they were really just a hidden portion of the advertised room rate.

11. Defendant Hyatt is a Delaware corporation with its principal place of business at 71 South Wacker Drive, 12th Floor, Chicago, Illinois 60606. Hyatt is a global hospitality company that controls 13 premier hotel brands, including 739 properties in 57 countries. Hyatt controls a substantial percentage of all hotel room inventory in the United States.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Hyatt's Practice Of Charging Deceptive Resort Fees

12. The hotel industry has become highly price competitive, particularly with the increased use by consumers of internet services that permit consumers to comparison shop across hotel brands. The Internet allows consumers to review large numbers of rooms offered by hotels at the same time and to compare their prices, which the hotels typically advertise using a daily room rate.

13. At issue in this case is the growing and continued practice of hotels advertising daily room rates online but excluding mandatory resort fees charged in the initially advertised room rate. For instance, Hyatt's practice is to initially advertise a room rate that does not include the resort fee, but then to include it in the final charges a consumer is required to pay. Hyatt charges these additional mandatory resort fees to increase its revenues without appearing to raise the room rate at its hotels. Hyatt does not include these resort fees in the room rate because doing so would effectively increase the price of a hotel room and consequently make its hotels less price competitive to consumers when compared with other hotels.

14. Hyatt's practice of initially advertising only part of a price and then later revealing other "fees" as the consumer completes the buying process has been labeled "drip pricing" by the Federal Trade Commission ("FTC"). In November 2012, the FTC warned the hotel industry that drip pricing as it pertains to charging resort fees may violate federal consumer protection law by misrepresenting the price consumers can expect to pay for their hotel rooms.[3] The FTC specifically warned the hotels that the "most prominent figure … should be the total inclusive estimate," which "include[s] … any unavoidable and mandatary fees, such as resort fees," and should be provided to the consumer up front, not later in the checkout process.[4]

15. The FTC's Bureau of Economics then issued a report in 2017 confirming its concerns about this practice of drip pricing. That report concluded:

> In sum, the literature suggests that separating mandatory resort fees from posted room rates without first disclosing the total price is likely to harm consumers by artificially increasing the search costs and the cognitive costs of finding and booking hotel accommodations. Unless the total price is disclosed up front, separating resort fees from the room rate is unlikely to result in benefits that offset the likely harm to consumers.

16. Notwithstanding these warnings from the FTC, Hyatt continues to advertise room prices that do not include its resort fees. Hyatt has continued this deceptive practice because it has become a key profit center for the company, as it has reaped hundreds of millions of dollars from expanding its use of resort fees over the past decade.

17. By charging consumers resort fees in addition to the advertised daily room rate, Hyatt makes hundreds of millions of additional dollars in revenue without appearing to increase

---

[3]https://www.ftc.gov/news-events/press-releases/2012/11/ftc-warns-hotel-operators-price-quotes-exclude-resort-fees-other
[4]https://www.ftc.gov/system/files/documents/foia_requests/2016-00453_warning_letters_93_pgs.pdf

the price for which it initially offers its rooms. Hyatt's unlawful trade practice has affected consumers in this District, in Illinois, and throughout the United States.

18. Hyatt also exercises control over the resort fees its hotels charge. Hyatt's resort fee policies forbid hotels it owns, manages or franchises from charging resort fees unless the property obtains Hyatt's approval to charge the fees. Moreover, Hyatt prohibits charges or billing practices that Hyatt determines are misleading or detrimental, including incremental fees or services that guests would normally expect to be included in the hotel room charge. Hyatt approves resort fees, however, despite their deceptive nature.

### Defendant's Misleading Advertising Practices Concerning Resort Fees

19. When consumers search for and seek to book a hotel using Hyatt's online reservation system, Hyatt provides the consumers with a quoted room rate. For example, the following information appeared on Hyatt's website for a room at the Hyatt Palm Springs in July 2019:



20. At this initial stage in the process of booking a reservation online, where the hotel appears on a page with rooms at other properties, the quoted "most prominent" daily room rate does not include or even mention the mandatory resort fee the consumer will be required to pay. Similarly, when consumers searched at the same time for a hotel room using the reservation system operated by Travelocity or another online service, they received a similar quoted room rate that also did not include or mention the resort fee:

-7-



21. If consumers selected the quoted rate for a room at the Hyatt Palm Springs on Hyatt's online reservation system, as set forth in paragraph 19 above, they were directed to another page that provided the following information:

//

//

//

//

//

//

//

//

//

//

//

//



**Hyatt Palm Springs**
285 North Palm Canyon Drive
Palm Springs, California, 92262
United States

Visit Hotel Website

VIEW PHOTOS

(i) The hotel resort fee is $22 per night and includes Sunset Celebration Reception nightly from 4pm – 5pm serving complimentary wine, domestic beer & our specialty cocktail of the day along with small bites, morning coffee in lobby, daily newspaper, daily in room water, daily in room ...
Read More

View Points | View Rates

Hotel Currency

| Save Up To 20% | Member Rate | Standard Rate | Bed And Breakfast | Double Your Points |
|---|---|---|---|---|
| from $104 USD | from $117 USD | from $129 USD | from $141 USD | from $142 USD |

Rate Rules



**1 King Bed Suite**
The King City View Suite boasts views of both the mountains and city, along with extra guestroom space and a king Hyatt Grand Bed®.
More Details

$104
Avg/Night (USD)

SELECT



**2 Double Beds**
Our double double offers two double Hyatt Grand Beds® and warm décor for a peaceful night of sleep. Enjoy spacious accommodations and modern amenities like a 42" LCD TV and coffeemaker.
More Details

$104
Avg/Night (USD)

SELECT



**2 Double Beds Suite**
This spacious suite comes with a separate bedroom and two double Hyatt Grand Beds® along with spectacular views of Palm Springs, California.
More Details

$104
Avg/Night (USD)

SELECT







22. At this point in the booking process, the website shows room rates for different room options. The eye is immediately drawn to the bright orange "SELECT" buttons under the room rates for each type of room. Someone who looks closely at the fine print near the top of the page might notice a reference to a $22 resort fee, which is the first time the fee is disclosed in the

-9-

booking process.  There is no disclosure on this page stating the resort fee is on top of the advertised room rates and the "most prominent" estimated price is not inclusive of the fee.  If a customer were to click on the "Read More" button shown just below the reference to the resort fees, there is no disclosure that the resort fee is not included with the room rates identified on the screen.[5]  In short, the first impression given by the disclosure is that the resort fee is included in the room rates disclosed on the webpage.  And of course, first impressions influence how people judge subsequent information.

23.     If a customer visiting the site depicted above were to select the King Bed Suite advertised for $104, they would then see the following screen when completing his or her reservation:



24.     This is the first point in the booking process in which Hyatt reveals that the true price is not $104, but instead $142.62 due to taxes and unspecified fees.

25.     If—and only if—a customer clicks on the button titled "See Full Breakdown," he or she will see that the additional charges result from occupancy and tourism taxes, an unexplained and previously undisclosed $2 "Busn Distr Fee," and $22 in "Resort Fees."  That information is

---

[5] The disclosure states, in full:  "The hotel resort fee is $22 per night and includes Sunset Celebration Reception nightly from 4pm – 5 pm serving complimentary wine, domestic beer & our specialty cocktail of the day along with small bites, morning coffee in the lobby, daily newspaper, daily in room water, daily in room coffee and tea, bicycle rental, business center, 24 hour Stay-fit Gym, round trip shuttle service (3 mile radius).

contrary to the information provided in the earlier screen implying that the resort fee was included in the quoted room price:



26. There is no reason to hide the resort fee in the manner described above except to confuse or deceive consumers. By bundling resort fees with taxes, the breakdown also misleadingly conveys the impression that the resort fees are mandatory and government-imposed, when they are not. Further, the "See Full Breakdown" is in small, non-contrasting font color, which is a common method companies use to suppress clicks to links on websites. The smaller screen size of phones and tablets, commonly used for booking hotels in this day and age, also make it easier to overlook the small, non-contrasting font used for the "See Full Breakdown" button. And the fact that the resort fee is first presented in a manner that suggest it is part of the room charge (see Paragraph 21 above), further has the capacity or tendency to confuse customers about the true nature of the resort fees.

//

//

## CLASS REPRESENTATIONS

27. Plaintiff brings this case as a class action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of all persons in the United States who were charged one or more resort fees at a Hyatt property in the United States. Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

28. Plaintiff reserves the right to later seek certification of alternative classes or subclasses, as appropriate after discovery and further investigation.

29. Plaintiff is a member of the Class.

30. The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by accessing Hyatt's records. A database of Hyatt's customers is maintained by Defendant and includes customer names, contact information, date of stay, and charges paid. Thus, records are readily available for purposes of identifying all members of the Class and providing notice of the instant class action to all Class members and determining the nature and size of each member's claim.

31. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged resort fees by Hyatt. The representative Plaintiff, like all putative Class members, has been damaged by Hyatt's misconduct in that he has been assessed and/or will continue to be assessed unlawful resort fees. Furthermore,

the factual basis of Hyatt's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

32. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single action simultaneously, efficiently, and without duplication of the expenses that numerous individual actions would entail. No difficulties are likely to arise in the management of this class action that will preclude its purpose as a class action, and no superior alternatives exist for the fair and efficient adjunction of this controversy. Without a class action, Defendant will likely retain the benefit of their wrongdoing and may continue the course of their actions, which could result in further damages.

33. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

34. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Violation of Illinois Consumer Fraud Act

35. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

36. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

37. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate that purpose.

38. Defendant intended that Plaintiff and Class members would rely upon its deceptive and misleading conduct in charging the resort fees discussed herein, and a reasonable person would in fact be misled by this deceptive conduct.

39. As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each Class member sustained damages in an amount to be proven at trial.

40. In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## COUNT II
### Unjust Enrichment

41. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

42. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

43. Plaintiff and the other members of the Class conferred benefits on Defendant by paying resort fees.

44. Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's and Class members' payment of resort fees. Retention of the monies under these circumstances is unjust and inequitable because Defendant's resort fees are misleading to consumers.

45. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class members for their unjust enrichment, as ordered by the Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and the other Class members respectfully request that the Court:

A. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Award damages, including compensatory, exemplary, statutory, incidental, consequential, actual, and punitive damages to Plaintiff and the Class in an amount to be determined at trial;

C. Award Plaintiff and the Class their expenses and costs of the suit, pre-judgment interest, post-judgment interest, and reasonable attorneys' fees;

D. Grant restitution to Plaintiff and the Class and/or require Defendant to disgorge its ill-gotten gains;

E. Permanently enjoin Defendant from engaging in the unlawful conduct set forth herein; and

F. Grant any and all such other relief as the Court deems appropriate.

Dated: July 12, 2019  Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Frederick J. Klorczyk III*
 Frederick J. Klorczyk III

Frederick J. Klorczyk III
Joel D. Smith (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: fklorczyk@bursor.com
 jsmith@bursor.com

*Attorneys for Plaintiff*

**MCMORROW LAW, P.C.**
Michael J. McMorrow
118 North Clinton St., Suite 108
Chicago, IL 60661
Telephone: (312) 265-0708
E-Mail: mike@mjmcmorrow.com

*Designated Local Counsel for Plaintiff under N.D. Ill. LR 83.15*