### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ERIC WASHINGTON, AND JOANN
COUVION, individually and on behalf
Of all others similarly situated,

        Plaintiffs,

        v.

HYATT HOTELS CORP,

        Defendant.

Case No. 1:19-cv-04724

Judge John Robert Blakey

### MEMORANDUM OPINION AND ORDER

Plaintiffs Eric Washington and Joann Couvion, on behalf of a putative class, sue Defendant Hyatt Hotels Corporation under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) and the doctrine of unjust enrichment. Plaintiffs claim that Defendant illegally tacked on nightly resort fees when they booked hotel rooms on Defendant's website and mobile app. According to Plaintiffs, this practice enables Defendant to collect hundreds of millions of dollars in revenue without appearing to raise hotel room rates. Defendant moves to dismiss Plaintiffs' first amended complaint (FAC) pursuant to Federal Rule of Civil Procedure 12(b)(6). [18]. For the reasons explained below, this Court grants Defendant's motion.

I.      **The First Amended Complaint's Allegations**

A.      **The Parties**

Defendant is a global hospitality company that controls 13 hotel brands and maintains 739 properties in 57 countries.  [13] at ¶ 12.

Plaintiff Washington stayed at several of Defendant's properties in the last four years, including: (1) the Hyatt Regency in Phuket, Thailand and the Grand Hyatt in Bangkok, Thailand in March 2019; (2) the Hyatt Zilara in Montego Bay, Jamaica in April 2018; (3) the Hyatt Regency Waikiki in Hawaii in March 2018; and (4) the Hyatt Zilara in Cancun, Mexico in August 2017.   *Id.* at ¶ 10.  Washington used Hyatt's website or mobile app to book each of these stays.  *Id.*  Washington alleges that he paid resort fees each time he stayed at one of Defendant's properties and that these fees ranged in price from about $20 to $40 per person per night.  *Id.*  Washington also claims that, at the time he made each reservation, "he was either unaware of the fees, unaware that they were on top of the advertised room rate, or . . . believed that the fees were mandatory and in the nature of government-imposed taxes."  *Id.*

Plaintiff Couvion stayed at the Hyatt Regency Boston Harbor in 2015 and used Defendant's website to book this stay.  *Id.* at ¶ 11.  At some point, Couvion paid resort fees in connection with this reservation, but claims she "was unaware of the fees when she made her reservation, and only learned they were on top of the advertised room rate when she checked-out and saw the final bill."  *Id.*

According to Plaintiffs, Defendant engages in a trade practice known as "drip pricing," whereby Defendant initially excludes mandatory resort fees when it

advertises room rates, but then includes those resort fees in the final charges it assesses customers. *Id.* at ¶¶ 14–16. Plaintiffs claim that Defendant engages in this practice to increase its revenues without appearing to raise room rates because doing so otherwise would render Defendant's hotels less price-competitive to consumers when compared with other hotels. *Id.*

### B. Defendant's Booking Website and App

When customers search for a hotel room using Defendant's website, Defendant first provides them with quoted room rates. *Id.* at ¶ 21. For example, Defendant advertised the following Palm Springs room on its website in July 2019:



*Id.* This first screen reflects a quoted rate that excludes the mandatory resort fee Defendant ultimately requires a customer to pay. *Id.* at ¶ 22.

If a customer clicks on "SELECT," Defendant's website directs him or her to a second screen displaying room availability and pricing options. *Id.* at ¶ 23. As displayed below, Hyatt provides a description of the resort fee at the top of this page:



*Id.* The portion of the second screen concerning resort fees states:

> The hotel resort fee is $22 per night and includes Sunset Celebration Reception nightly from 4pm – 5pm serving complimentary wine, domestic beer & our specialty cocktail of the day along with small bites, morning coffee in the lobby, daily newspaper, daily in room water, daily in room coffee and tea, bicycle rental, business center, 24 hour Stay-fit Gym, round trip shuttle service (3 mile radius).

4

*Id.*

Upon selecting a room type, Defendant's website takes a customer to a third screen, which provides him or her with a "Summary of Charges." *Id.* at ¶ 25. For instance, if a customer in the Palm Springs example selected the king bed suite, he or she would see the following screen before completing the reservation:



*Id.* at ¶ 25. As the third screen reflects, the total price assessed to the customer to complete the transaction is $142.62—higher than the initial quoted rate of $104. *Id.* The customer must click "See Full Breakdown" in order to view an itemized description of the resort fee:



*Id.* at ¶ 27.

The process of booking a room through Defendant's mobile app, according to Plaintiffs, remains "substantially identical to booking a room" on its website. *Id.* at ¶ 29.

## II.   Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully.  *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016)).  Thus, "threadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice."  *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's

favor. *Iqbal*, 556 U.S. at 678. This Court does not, however, accept a complaint's legal conclusions as true. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 603 (7th Cir. 2019).

## III. Analysis

Plaintiffs bring a two-count complaint, claiming that Defendant's method of collecting resort fees violates the ICFA (Count I) and entitles them to recovery under the doctrine of unjust enrichment (Count II).[1] [13]. Defendant moves to dismiss both counts. [18]. This Court considers each count in order below.

### A. Count I: ICFA[2]

The ICFA prohibits unfair or deceptive methods of competition. 815 Ill. Comp. Stat. 505/2. To prevail on an ICFA claim, a plaintiff must establish that: (1) Defendant committed a deceptive or unfair act; (2) Defendant possessed the intent that others rely upon that deceptive or unfair act; (3) the act occurred in the course of trade or commerce; and (4) Plaintiff suffered actual damages. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014).

The ICFA allows a plaintiff to base his claim upon either deceptive conduct or unfair conduct, or both. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). Here, Washington bases his claim upon both deceptive and

---

[1] Plaintiffs allege jurisdiction in this Court pursuant to 28 U.S.C. § 1332(d), because the Plaintiffs' claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous Class members who are citizens of states other than Defendant's state of citizenship.

[2] Only Plaintiff Washington brings this claim. [13] at ¶ 40.

unfair conduct. [13] at ¶ 43. This Court considers each theory separately below.

### 1. Deceptive Business Practices

In moving to dismiss, Defendant primarily argues that Washington fails to identify a cognizable deceptive act or practice. [19] at 5–9. Determining whether a plaintiff sufficiently alleges a deceptive act or practice requires this Court to view the act "in light of the totality of the information made available to plaintiffs." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017) (quoting *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005)). No deception exists "if a consumer has been alerted to the possibility of the complained-of result." *Newman v. Metropolitan Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018). When evaluating an ICFA claim on a motion to dismiss, courts ask whether the alleged deceptive act or practice creates the likelihood of deception or has the capacity to deceive a reasonable consumer. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020); *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001).

Washington claims that Defendant's method of charging resort fees constitutes a deceptive act or practice because Defendant initially advertises a quoted price that excludes those fees; such practice, Washington claims, lures customers into eventually reserving a room based upon their reliance upon the initial quote. [13]. But the allegations in the FAC dispel any notion of deception, because a reasonable customer considering all available information would have been fully aware of the resort fee before reserving a room. Specifically, when customers first search for a hotel room using Defendant's online reservation system, Defendant provides an

8

initial quoted room rate; in the Palm Springs example, the first screen displays:



[13] at ¶ 21.  Though this first screen does not reference resort fees, it also makes clear to the customer that the quoted price starts "from $104 avg/night"—meaning that the $104 price constitutes the *minimum starting price* from which a customer might select for that room per night.  Then, once a customer selects the initial $104 quoted rate, the website directs him to the next page, which allows the customer to select a specific type of room:



*Id.* at ¶ 23.  This second screen provides a description of the resort fee, including its cost and its purpose.  *Id.*  Then, upon selecting a room, the system provides customers with a "Summary of Charges," as depicted below.  *Id.* at ¶ 25.



A reasonable customer viewing this page would see that the total charges amount to a higher price than the original quoted price as a result of added taxes and fees.  Moreover, when the customer clicks "See Full Breakdown," he or she views the resort fee as an itemized charge, along with other taxes and fees:



*Id.*  In the full breakdown, the website tells the customer the exact amount he will pay if the customer completes the reservation.  Thus, even if the first two screens

created the impression that a customer would only pay $104, this final screen, which a customer necessarily sees before completing any transaction, wholly dispels that notion. This Court finds implausible that a reasonable consumer would be deceived under these circumstances.

Two persuasive authorities confirm this Court's reasoning. In *Ford v. Hotwire, Incorporated*, a plaintiff brought claims under California consumer protection statutes[3] against Hotwire, a hotel booking website, alleging that Hotwire engaged in deceptive practices by failing to disclose the existence of hotels' resort fees during the booking process. No. 07-CV-1312HNLS, 2008 WL 5874305, at *1–2 (S.D. Cal. Feb. 25, 2008). The plaintiff claimed he did not know about a certain resort fee until he checked out of his hotel room, at which time the hotel charged him a $5 resort fee. *Id.* at *2. The California district court found that Hotwire adequately disclosed that resort fees may be imposed because Hotwire customers could not submit payment without indicating their agreement to Hotwire's terms of use, which provide that "Hotwire rates do not include special fees charged by hotels upon check-out" and that customers "will be required to pay these fees directly to the hotels at check-out time." *Id.* at *2, 4.

Likewise, in *Harris v. Las Vegas Sands L.L.C.*, the district court considered a plaintiff's claims that a Las Vegas hotel failed to disclose the existence of mandatory resort fees through its booking website. No. CV 12-10858 DMG FFMX, 2013 WL

---

[3] California law similarly requires plaintiffs to plead an act or practice likely to deceive reasonable consumers. *Beardsall*, 953 F.3d at 972.

5291142, at *5–6 (C.D. Cal. Aug. 16, 2013). The defendant hotel required the plaintiff to pay the room fee upon reserving a room through its website, but then did not charge the plaintiff its mandatory resort fee until check-out. *Id.* at *2–3. The court rejected the plaintiff's claim that such conduct constituted deception, reasoning that the hotel clearly disclosed the existence and amount of the resort fee on its final reservation page. *Id.* at *5. That disclosure, which rested on a line directly beneath the grand total, stated that the grand total did *not* include resort fees that the hotel would eventually collect. *Id.* at *2–3.

Here, Defendant acted with even greater transparency: it disclosed the existence and amount of the resort fees not once but twice during the booking process. And importantly, Defendant *included* the resort fee in the itemized list of final charges a customer sees *before* reserving the room. These facts undermine Washington's claim of deception. *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017) (finding an ambiguous label for packaged cheese not deceptive as a matter of law, because reasonable consumers knew "exactly where to look to investigate" ingredients); *Fuchs v. Menard, Inc.*, No. 17-CV-01752, 2017 WL 4339821, at *5 (N.D. Ill. Sept. 29, 2017) (dismissing ICFA claim because a consumer possessed "direct access to all of the information" needed to avoid deception).

Seeking to avoid dismissal, Washington relies heavily upon two distinguishable cases. In *Al Haj v. Pfizer Incorporated*, the plaintiff brought an ICFA claim against the defendant for advertising a cough syrup as "Maximum Strength"

12

and charging more for it than its "Regular Strength" product; on summary judgment, the plaintiff pointed to evidence that a bottle of the Maximum Strength syrup contained a lower concentration of active ingredients than the defendant's Regular Strength syrup, but twice the dosage volume (and therefore half the number of doses per bottle).  No. 17-C-6730, 2019 WL 3202807, at *1–3 (N.D. Ill. July 16, 2019).  Although the defendant placed a disclaimer on the back of its Maximum Strength syrup stating "Maximum strength claim based on maximum levels of active ingredients per dose," the district court denied summary judgment, reasoning the disclaimer "only indirectly (at best) disclaims" the false implication that the Maximum Strength syrup possessed more potency per volume.  *Id.* at *5.  The district court also noted that customers could only discover the truth by going beyond the Maximum Strength label itself and cross-referencing the listed ingredients on both the Maximum Strength and Regular Strength versions.  *Id.*

In *Muir v. Playtex Products., LLC*, the plaintiff sued the maker of the Diaper Genie Elite II based upon its advertisement that the diaper genie was "proven #1 in odor control."  983 F. Supp. 2d 980 (N.D. Ill. 2013).  The district court rejected the defendant's attempt to dismiss the plaintiff's ICFA claim because the defendant had not, in fact, proven its product's superiority to diaper disposal products using proprietary film linings.  *Id.* at 988.  Although the product's packaging disclosed that it ranked #1 when tested "against other major competitors that use ordinary garbage bags and/or carbon refills under the most rigorous conditions of emptying the pail," the district court concluded that the packaging still could deceive consumers into

thinking the product ranked first overall. In particular, the court emphasized that: (1) consumers focused on the front of the package and the prominently featured "Proven #1" claim; and (2) the defendant "made no other efforts to inform consumers" that the ranking did not cover diaper disposal products with proprietary film lining. *Id.*

This case stands in stark contrast to those cases. Washington, unlike the plaintiff in *Al Haj*, need not have cross-referenced different products or services to discover the existence and amount of resort fees. And unlike the defendant in *Muir*, whose packaging prevented a customer from easily accessing the truth, Defendant's booking process here provides clear and easy access to the existence, purpose, and amount of the resort fee. Indeed, a customer booking a room through Defendant's website or app would have necessarily noticed a price discrepancy between the initial price quote and the final charges before committing to the transaction. Based upon the undisputed portions of the record, this Court finds Washington's allegation of deception to be implausible. *See, e.g.*, *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013–14 (N.D. Ill. 2018) (dismissing ICFA claim because "this is not a case in which consumers would have to consult an ingredients list or other fine print to determine whether prominent images or labels a defendant uses in connection with its product accurately reflect the product's true nature or quality.").

## 2. Unfair Business Practices

To the extent Washington's claim stems from an alleged "unfair" practice, it similarly fails. In determining whether conduct is unfair under the ICFA, courts

14

consider whether the practice: "(1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014); *see also Vanzant*, 934 F.3d at 739. A practice need not satisfy all three criteria to be actionable; rather, it "may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Batson*, 746 F.3d at 830 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). Washington's allegations meet none of the criteria.

First, a practice offends public policy where "the practice violates statutory or administrative rules establishing a certain standard of conduct." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 716 (N.D. Ill. 2018); *see also Batson*, 746 F.3d at 833 (the ICFA "is concerned with public policy as established by statutes and the common law"). Relying upon a November 2012 FTC "Dear ____" warning letter, Washington argues that the FTC prohibits Defendant's practices here. [24] at 18. Not so. The FTC warning letter by itself does not constitute an administrative rule establishing a certain standard of conduct. *Cf. F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 239 (1980) (while issuing administrative regulations constitute final agency actions, initiating an administrative complaint does not).

More significantly, the FTC's letter explicitly addressed circumstances where: (1) customers "stated that they only learned of the fees after they arrived at the hotel, long after making a reservation at what they believed to be the total room price"; or (2) "paid for the reservation in advance, and only found out after they arrived at the

hotel that they would have to pay additional mandatory fees." [24-1] at 5. As explained above, the FAC does not allege either of these scenarios. To the contrary, the FAC alleges that a customer learns about the resort fee before booking (or paying for) a room on Defendant's website. Moreover, the FTC stated that while "a hotel reservation site may breakdown the components of the reservation estimate (*e.g.*, room rate, estimated taxes, and any mandatory, unavoidable fees), the *most prominent figure for consumers should be the total inclusive estimate.*" *Id.* at 6 (emphasis added). Defendant also complies with this directive by identifying the "Total Per Room" as the most "prominent figure" (albeit not on the first screen). [13] at ¶ 25. Thus, to the extent the FTC's warning letter supplies a relevant standard of conduct, the FAC fails to allege that Defendant's conduct deviates from that standard.

Second, courts consider a practice "immoral, unethical, oppressive, or unscrupulous" if it is "so oppressive as to leave the consumer with little alternative except to submit to it." *Batson*, 746 F.3d at 833 (quoting *Robinson*, 775 N.E.2d at 961). Washington makes no effort to demonstrate unfairness under this criterion, [24], and *Batson* precludes such a finding anyway. There, the plaintiff alleged that the defendant violated the ICFA by selling him a concert ticket that included a mandatory $9 parking fee because he did not drive a car to the concert and only discovered that his ticket bundled the parking cost after he completed the purchase. 746 F.3d at 830, 833. The Seventh Circuit held that the plaintiff failed to plausibly allege that the defendant's practice was "immoral, unethical, oppressive, or

16

unscrupulous" because the plaintiff was, in fact, willing to pay the full ticket price—parking fee included and all. *Id.* at 833–34. So too here.

Third, this Court asks whether Defendant's practice causes substantial injury to consumers by asking whether the injury is: (1) substantial; (2) not outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) one that consumers themselves could not reasonably have avoided. *Batson*, 746 F.3d at 834; *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). *Batson* forecloses Plaintiff's claim on this issue as well. There, the Seventh Circuit held that, even if the first two criterion were met, the plaintiff could have reasonably avoided the parking fee by skipping the concert and opting for other entertainment. 746 F.3d at 834. Here as well, Washington could have avoided paying the modest resort fees by, among other things, choosing a different hotel or opting for an Airbnb. *See id.*; *see also, e.g.*, *Phillips v. Double Down Interactive LLC*, 173 F. Supp. 3d 731, 743 (N.D. Ill. 2016) (defendant's online gambling games causes no substantial injury to consumers because plaintiff could have opted for alternative entertainment or stopped playing altogether).

### 3. ICFA Damages

Besides failing to plausibly allege a deceptive or unfair act or practice, Washington also fails to allege actual damages. Under the ICFA, a plaintiff must plead actual pecuniary loss which, in the case of an individual consumer plaintiff, occurs "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Kim v. Carter's Inc.*,

598 F.3d 362, 365 (7th Cir. 2010) (quoting *Mulligan v. QVC, Inc.*, 888 N.E.2d 1190, 1197 (Ill. App. Ct. 2008)); *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (a plaintiff must plead actual damages to sustain an ICFA claim based upon either a "deceptive act" or "unfair practice" theory).

To satisfy this standard, the plaintiff must allege the good or service he or she paid for was "worth less than" what he actually paid, or that he "could have shopped around and obtained a better price in the marketplace." *Kim*, 598 F.3d at 365; *see also Benson*, 944 F.3d at 648 (affirming dismissal of ICFA claim for failure to plead damages where the plaintiffs never alleged that the chocolates they received "were worth less" than what they paid, or that they "could have obtained a better price elsewhere"); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (ICFA claim properly dismissed where the plaintiff failed to assert that he paid more than the actual value of the merchandise or that he did, in fact, shop around and find merchandise for a lower price).

Washington fails to allege actual damages under these standards. Fundamentally, Washington premises his damages theory upon the notion that he did not receive the "benefit of his bargain" because "he and other customers did not get what they pay for"—the original quoted price. [24] at 17. Not true. As illustrated by Washington's own complaint, the first and second screens on Defendant's booking website provide a starting quote, not a contractual obligation. As the FAC makes clear, the only bargain Washington struck with Defendant was the ultimate price he paid on the hotel room, inclusive of the resort fee. And because he does not allege

that his hotel room and resort services were worth less than the real value, or that he could have obtained a better price elsewhere, *see generally* [13], he fails to plead actual damages, *Kim*, 598 F.3d at 365; *Benson*, 944 F.3d at 648.

In the end, Washington's damages theory boils down to nothing more than defeated expectations from paying more than what Defendant quoted him on the first screen. Actual damages, however, do not lie where a plaintiff pleads nothing more than harm rooted in "defeated expectations." *Camasta v. Jos. A Bank Clothiers, Inc.*, No. 12 C 7782, 2013 WL 474509, at *5 (N.D. Ill. Feb. 7, 2013); *see also, e.g.*, *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 743 (N.D. Ill. 2019) ("That [a customer] expected to receive something more than what she got, in and of itself, does not constitute actual damages."). For these reasons, this Court dismisses Washington's ICFA claim.

### B. Count II: Unjust Enrichment

Finally, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (applying Illinois law). Here, Plaintiffs' unjust enrichment claim rests upon the same allegedly improper conduct challenged in Washington's ICFA claim. *See* [13] at ¶¶ 45–49. As a result, this claim fails as well.

19

## IV.     Conclusion

For the reasons explained above, this Court grants Defendant's motion to dismiss [18] and dismisses the first amended complaint [13] with prejudice, because any potential amendment would be futile.  The Clerk is directed to enter a final judgment of dismissal.  All dates and deadlines are stricken.  Civil case terminated.

Dated:  June 9, 2020

Entered:

John Robert Blakey
United States District Judge